STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 0178

ROBERT EDWARD KELLEY

VERSUS

THE ESTATE OF ANN TALIANCICH KELLEY

Judgment Rendered: __OCT 0 4 2021__

* * * * *

On Appeal from the
22nd Judicial District Court
Parish of St. Tammany, State of Louisiana
No. 2017-14248

The Honorable Richard A. Swartz, Judge Presiding

* * * * *

<table>
<tr><td>Robert T. Garrity, Jr.<br>Harahan, Louisiana</td><td>Attorney for Plaintiff/Appellant,<br>Robert Edward Kelley</td></tr>
<tr><td>Patrick K. Reso<br>John D. Miranda<br>Hammond, Louisiana</td><td>Attorneys for Defendant/Appellee,<br>Jennifer A. Madona, Independent<br>Executrix for the Estate of<br>Ann Taliancich Kelley</td></tr>
</table>

* * * * *

BEFORE: McDONALD, LANIER, AND WOLFE, JJ.

**WOLFE, J.**

The plaintiff, Robert Edward Kelley, appeals the trial court's judgment that granted summary judgment in favor of the defendant and declared a donation to be valid and certain immovable property to be the plaintiff's deceased wife's separate property. We reverse.

## FACTS

Mr. Kelley instituted this suit on September 11, 2017, against the estate of his deceased wife, Ann Taliancich Kelley, seeking to annul a September 27, 2016 Act of Donation by which he purportedly donated his one-half undivided interest in the family home located at 270 South Orchard Lane, Covington, Louisiana, to his wife. He alleged that he underwent surgery for a brain condition in January 2016, and thereafter his wife "maintained him on a regiment [*sic*] of mind-altering and mind-numbing drugs." He further alleged that his wife convinced him to move from Jefferson Parish to St. Tammany Parish so she could be closer to her daughter. As a result, they sold their home in Metairie and purchased a new home located at 33 Tupelo Trace in Mandeville, Louisiana.[1] He claimed that after his wife's death in August of 2017, his son searched the public records of St. Tammany Parish and found an Act of Donation purportedly signed by Mr. Kelley on September 27, 2016. Mr. Kelley claimed he had no knowledge or recollection of signing the Act and that he did not know A. William Mysing, Jr., the notary public before whom the Act was executed, or the two witnesses to the Act. Mr. Kelley prayed for judgment declaring the Act of Donation null and void, averring that he was heavily medicated by his wife at the time of the donation and lacked the mental capacity to engage in a notarial act.

---

[1] We note that this address is different from that of the Covington home that is purportedly the subject of the Act of Donation.

2

The estate, appearing through its executrix, Jennifer Madona, who is Mrs. Kelley's daughter and Mr. Kelley's stepdaughter, answered the petition and generally denied its allegations. The estate then filed a motion for summary judgment as to the claims against it, which it supported with the affidavits of Ms. Madona and Mr. Mysing. Mr. Kelley opposed the motion for summary judgment, supporting his opposition with his own affidavit and attached medical notes. After a hearing, the trial court took the matter under advisement. The trial court signed a judgment on March 11, 2019, which granted the motion for summary judgment, declared that the Act of Donation was valid, and further declared that the property located at 270 South Orchard Lane, in Covington, Louisiana, was the separate property of Mrs. Kelley.

Mr. Kelley appealed; however, this court dismissed the appeal for lack of jurisdiction because the March 11, 2019 judgment lacked appropriate decretal language. See **Kelley v. Estate of Kelley**, 2019-1044 (La. App. 1st Cir. 2/21/20), 299 So.3d 720, 723. Thereafter, pursuant to the stipulation of the parties, the trial court signed an "Uncontested Amended Judgment" on November 24, 2020, which purported to amend the March 11, 2019 judgment to add "that this is a final judgment on the merits." Mr. Kelley again appealed. This court issued a rule to show cause, noting that the November 24, 2020 judgment appeared to be defective because it required reference to a prior document, namely the March 11, 2019 judgment. Mr. Kelley has since supplemented the appellate record with a second amended judgment, which remedied the defect noted in this court's rule to show cause. See La. Code Civ. P. arts. 1951 and 2088A(12). Satisfied that this court's appellate jurisdiction has been properly invoked by a valid final judgment, we consider the merits of Mr. Kelley's appeal. See La. Code Civ. P. arts. 1841 and 2083A.

3

## DISCUSSION

On appeal, Mr. Kelley contends the trial court erred in granting summary judgment to the estate, because there are genuine issues of material fact regarding his mental capacity at the time he executed the Act of Donation.

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966A(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. P. art. 966A(2). The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. La. Code Civ. P. art. 966D(2). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that governs the trial court's determination of whether summary judgment is appropriate. **In re Succession of Beard**, 2013-1717 (La. App. 1st Cir. 6/6/14), 147 So.3d 753, 759-60.

The initial burden of proof is on the party filing the motion for summary judgment. La. Code Civ. P. art. 966D(1). The mover may meet this burden by filing supporting documentary evidence consisting of pleadings, a memorandum, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. See La. Code Civ. P. art. 966A(4). The mover's supporting documentary evidence must prove the essential facts necessary to carry his burden. **Leisure Recreation & Entertainment, Inc. v. First Guaranty Bank**, 2019-1698 (La. App. 1st Cir. 2/11/21), 317 So.3d 809, 817. Thus, in deciding a motion for summary judgment, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. **Id.** at 817-18; **Crockerham v.**

4

**Louisiana Medical Mutual Insurance Company**, 2017-1590 (La. App. 1st Cir. 6/21/18), 255 So.3d 604, 608.

Once the motion for summary judgment has been properly supported by the moving party (*i.e.*, the mover has established the material facts through its supporting documentary evidence), and the mover has made a *prima facie* showing that the motion for summary judgment should be granted, the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to his opposition, sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial – the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See **Babin v. Winn-Dixie Louisiana, Inc.**, 2000-0078 (La. 6/30/00), 764 So.2d 37, 39. If the non-moving party fails to produce factual support in his opposition sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, La. Code Civ. P. art. 966(D)(1) mandates the granting of the motion for summary judgment. See **Babin**, 764 So.2d at 40.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. **Janney v. Pearce**, 2009-2103 (La. App. 1st Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 2010-1356 (La. 9/24/10), 45 So.3d 1078. Further, simply showing the presence of disputed facts is insufficient if there is no legal issue presented by those contested facts. See **Franklin Credit Management Corp. v. Gray**, 2007-1433 (La. App. 4th Cir. 1/14/09), 2 So.3d 598, 603, writ denied, 2009-0476 (La. 4/17/09), 6 So.3d 795. A "genuine" issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. **Kasem v. State Farm Fire & Casualty Company**, 2016-0217 (La. App. 1st Cir. 2/10/17), 212

5

So.3d 6, 13. A fact is "material" when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. **Id**. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. **Bryant v. Premium Food Concepts, Inc.**, 2016-0770 (La. App. 1st Cir. 4/26/17), 220 So.3d 79, 82, writ denied, 2017-0873 (La. 9/29/17), 227 So.3d 288.

Mr. Kelley's petition challenges the validity of an act of donation. An *inter vivos* donation is a contract by which the donor gratuitously divests himself, at present and irrevocably, of the thing given in favor of the donee. La. Civ. Code art. 1468. At the time a donor makes a donation *inter vivos*, the donor must have capacity, meaning that he must be able to generally comprehend the nature and consequences of the disposition being made. See La. Civ. Code arts. 1471 and 1477. A person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation *inter vivos*. La. Civ. Code art. 1482A.

Cases involving challenges to capacity are fact-intensive. There is no litmus test applicable to evaluate mental capacity; rather, courts will look both to objective and subjective indicia presented in the particular case. Illness, old age, delusions, sedation, etc. may not establish lack of capacity but may be important evidentiary factors. If illness has impaired the donor's mind and rendered him unable to understand, then that evidentiary fact will establish that he does not have donative capacity. The courts will look to the medical evidence that is available, such as the medical records and the testimony of treating doctors, and to other expert testimony, and to the testimony of lay witnesses to make a determination based on the unique facts of the case. See La. Civ. Code art. 1477, Revision Comments - 1991, comment (f).

Additionally, a donation *inter vivos* shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor. La. Civ. Code art. 1479. Mere advice, persuasion, or kindness and assistance should not constitute influence that would destroy the free agency of a donor and substitute another's volition for his own. See La. Civ. Code art. 1479, Revision Comments - 1991, comment (b). Generally, a person who challenges a donation because of fraud, duress, or undue influence must prove it by clear and convincing evidence. However, if at the time the donation was made, a relationship of confidence existed between the donor and the alleged wrongdoer, and the alleged wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence. See La. Civ. Code art. 1483; **Succession of Dean**, 2017-0155 (La. App. 1st Cir. 3/29/18), 247 So.3d 746, 753, writ denied, 2018-00679 (La. 9/14/18), 252 So.3d 479. Like the inquiry as to the donor's capacity, a claim of undue influence is also a fact-intensive inquiry. **Id**.

The estate sought summary judgment on the basis that Mr. Kelley would be unable to meet his burden of proof as to his claims, specifically that he lacked the mental capacity to donate when he executed the Act of Donation. As the mover, the estate had the initial burden of proof on summary judgment; however, since the estate would not bear the burden of proving capacity at trial, the estate was only required to point out the absence of factual support for one or more elements of Mr. Kelley's claim. See La. Code Civ. P. art. 966D(1). To do so, the estate offered the affidavits of Ms. Madona and Mr. Mysing, noting it was undisputed, among other facts, that Mr. Kelley underwent "brain surgery" in January 2016.

Mr. Mysing attested that he prepared the Power of Attorney by which Mr. Kelley appointed his wife as his agent for the purchase of the Covington home and

7

the Act by which Mr. Kelley donated his undivided one-half interest in the Covington home to Mrs. Kelley. Mr. Mysing further attested that he had the opportunity to observe Mr. Kelley during his appearance and execution of the acts and that Mr. Kelley did not exhibit any signs of mental incapacity. Although referenced as attachments to the affidavit, neither the Power of Attorney nor the Act of Donation are contained in the appellate record.

Ms. Madona attested that she had personal knowledge of the property transfers underlying this litigation, stating that after their 1997 marriage, Mr. and Mrs. Kelley lived in Jefferson Parish. In April 2016, Mr. Kelley donated to his wife his one-half undivided interest in their Metairie home. According to Ms. Madona, in May 2016, Mr. Kelley executed a specific Power of Attorney in favor of his wife for the purchase of a home located at 270 South Orchard Lane, in Covington, Louisiana. A cash deed purchasing the home was executed in June 2016, then "[o]n September 27, 2016, Mr. Kelley, appearing in his own capacity, executed an Act of Donation in favor of [Mrs. Kelley] donating to her his one-half undivided [interest] in the 270 South Orchard Lane property." None of the documents referenced as attachments to the affidavit, including the Act of Donation, are contained in the appellate record.

In her affidavit, Ms. Madona concludes that she "had the opportunity to observe Mr. Kelley on several occasions after his surgery, and particularly the time surrounding the execution of the September 27th donation. At all times in question, he did not appear to suffer from any lingering complications or incapacities that would raise doubt as to his mental condition." Notably, although the estate identified January 2016 as the date of the uncontested brain surgery, Ms. Madona attested that Mr. Kelley's "brain surgery" took place in "January of **2017**." (Emphasis added.)

On appeal, Mr. Kelley argues that Ms. Madona's affidavit should be declared void because she is the estate's sole beneficiary and thus stands to lose one-half of

8

the interest in the real property at issue if the Act of Donation is declared invalid. However, in deciding a motion for summary judgment, the court must assume all affiants are credible. **Acadian Properties Northshore, L.L.C. v. Fitzmorris**, 2019-1549 (La. App. 1st Cir. 11/12/20), 316 So.3d 45, 51. Furthermore, this argument is based on facts outside of the appellate record before us.

Careful review of the two affidavits submitted by the estate reveal that the two affiants merely presented their own lay opinions that Mr. Kelley exhibited no outward signs of incapacity. Neither affiant provided a factual basis for his or her conclusion. Furthermore, only Mr. Mysing stated that he actually observed Mr. Kelley at the time he executed the Act of Donation. In contrast, Ms. Madona attested that she "had the opportunity to observe Mr. Kelley on several occasions after his surgery, and particularly the time surrounding the execution of the September 27th donation." She did not clarify how long after his execution of the Act of Donation that she observed him; however, she indicated that her observation occurred after his surgery, which she identified as having taken place in January **2017**. Most importantly, however, neither of the affidavits addresses or attempts to point out an absence of factual support for Mr. Kelley's specific claim that he executed the Act of Donation while under the influence of drugs administered by his wife.

Based on our *de novo* review of the record, we find that the estate failed to meet its initial burden of pointing out an absence of factual support for Mr. Kelley's claim of incapacity as a result of being drugged by his wife. Thus, the burden of proof never shifted to Mr. Kelley to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the estate is not entitled to judgment as a matter of law. See La. Code Civ. P. art. 966D(1). We note that on appeal, both parties present arguments relating to the evidence Mr. Kelley offered in opposition to the estate's motion for summary judgment, including references to Mr. Kelley being diagnosed with dementia before executing the Act of Donation and

9

undergoing a second surgery in December 2016 that involved the insertion of a brain shunt. However, since the burden of proof did not shift to Mr. Kelley, we do not address the arguments relating to Mr. Kelley's evidence. Rather, we reverse the summary judgment granted by the trial court, because we find that the estate did not satisfy its initial burden of proof on the motion.

In granting the estate's motion for summary judgment, the trial court's judgment awarded the estate declaratory relief, declaring the Act of Donation valid and that the home and immovable property located at 270 South Orchard Lane, in Covington, Louisiana, to be the separate property of Mrs. Kelley. Because we find the estate is not entitled to summary judgment, the trial court's award of declaratory relief is likewise reversed. We note, however, that the estate did not specifically pray for declaratory relief and, furthermore, did not present evidence establishing such entitlement.[2]

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed in its entirety and this matter is remanded for further proceedings. Costs of this appeal are assessed to the estate of Ann Taliancich Kelley.

**REVERSED.**

---

[2] In particular, we note that the property address identified in the judgment does not match the address of the only property identified in Mr. Kelley's petition. Further, the record before us on appeal does not contain the Act of Donation at issue or any evidence regarding property ownership that would establish the estate's entitlement to the declaratory relief set forth in the judgment.